IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

MICHAEL C. MOMYER,

     Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

     Defendant.

No. 06 CV 3040

Order

_____

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 2

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 3

III. ADMINISTRATIVE LAW HEARING . . . . . . . . . . . . . . 8

IV.  THE ALJ'S DECISION . . . . . . . . . . . . . . . . . . 15

V.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . 17
     A.  The Court's Jurisdictional Basis . . . . . . . 17
     B.  The Substantial Evidence Standard . . . . . . . 19
     C.  Determination of Disability . . . . . . . . . . 22
     D.  Standard for Reviewing the ALJ's Decision . . . 24
     E.  Analysis of the ALJ's Decision . . . . . . . . 26
         (1) Daily activities: . . . . . . . . . . . . . 28
         (2) Duration, frequency, and intensity of pain:
            . . . . . . . . . . . . . . . . . . . . . 33
         (3) Dosage, effectiveness, and side effects of
            medication . . . . . . . . . . . . . . . . 34
         (4) Functional restrictions . . . . . . . . . 35

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 36

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 1 of 39

This case involves an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and Supplemental Security Income benefits ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§1381 et seq. Plaintiff, Michael Momyer, (hereinafter "Momyer"), filed this action requesting reversal of the Commissioner's decision that he is not disabled. After careful consideration of the parties' written and oral arguments, the Court reverses the decision of the ALJ and awards benefits as of August 31, 2004.

## I. INTRODUCTION

On September 19, 2002, Michael Momyer applied for disability benefits under Title II (Tr. 87) and for supplemental security income benefits under Title XVI (Tr. 370). Mr. Momyer's alleged disability onset date is November 20, 2001. Docket No. 9, at 2.

Mr. Momyer's application was denied initially and on reconsideration. Docket No. 10, at 2. A hearing was held before an Administrative Law Judge ("ALJ") on June 19, 2003. Docket No. 9, at 2. The ALJ denied Mr. Momyer benefits on January 28, 2005. Id. On April 10, 2005, the Appeals Council denied review; therefore, the decision of the ALJ stands as

2

the final decision of the Commissioner.  Id.

## II. BACKGROUND

Mr. Momyer was born in 1960[1] and alleges he became disabled on November 20, 2001.  Docket No. 10, at 3.

On August 14, 2002, Mr. Momyer was examined by Dr. James Coddington because of back and leg pain.  Tr. 172.  Dr. Coddington ordered a radiographic report for Mr. Momyer, which found "decreased disc height at L5-S1 with likely vacuum disc and endplate sclerosis[2].  All consistent with degenerative disc and spine disease." Tr. 172.  On November 5, 2002, Dr. Coddington noted that Mr. Momyer had multiple problems with his shoulder, and stated he thought Mr. Momyer would need to have surgery before he could work.  Tr. 174.  Dr. Coddington also noted that Mr. Momyer could not lift more than 10 pounds above his shoulder height and he is unable to bend and twist his back.  Id.

Dr. Jeanne Staudt, a chiropractor, noted on October 23, 2002, that Mr. Momyer should not lift over 10 to 15 pounds with his right arm; he is able to sit, stand, walk and stoop,

---

[1] Plaintiff's brief, Docket No. 9 at 2 states Mr. Momyer was born in 1961.  However, the record of transcript indicates Mr. Momyer was born in 1960.  Tr. 87 and 370.

[2] A pathological hardening or thickening of tissue.

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 3 of 39

but should not crawl or climb due to his shoulder weakness. Tr. 177.

On November 27, 2002, Mark Dankle, D.O. examined Mr. Momyer. Tr. 194. Dr. Dankle recommended that Mr. Momyer avoid heavy lifting and carrying, however, he could carry up to 20 pounds occasionally. Tr. 196. Dr. Dankle also found no limitation as to standing, moving, walking, or sitting. Id. This appears to be the only time Dr. Dankle examined Mr. Momyer.

On July 21, 2003, Mr. Momyer was seen at the Family Care Center at the University of Iowa ("U of I"). Tr. 229. It appears that Mr. Momyer does not have one specific physician he sees at the U of I hospital; he sees the attending physician working that day. However, all doctors have access to his file, as their notes are similar. On this date, Mr. Momyer stated that he was feeling fatigued and had decreased energy levels, along with feeling down and depressed. Id. He was seen two months later, on September 9, 2003, at the U of I hospital. Tr. 231. Dr. Kaldjian, the attending physician, noted that Mr. Momyer had a labrum tear of the right shoulder with ganglion cyst that the Orthopaedic Clinic needed to evaluate. Tr. 231. However, Mr. Momyer was not a candidate

4

for surgery at this time because the U of I physicians were concerned about his liver.  Tr. 235.

On October 7, 2003, Dr. Chen diagnosed Mr. Momyer's pain as chronic in nature, and stated that lifestyle changes were necessary for his situation to improve.  Tr. 241.  These changes included beginning to exercise and cutting down on alcohol and tobacco consumption.  Tr. 241-42.  Dr. Chen also limited Mr. Momyer to no more than four 20 pound lifts per hour or repetitive 10 pound lifts and limited his bending, stooping, and reaching.  Tr. 242.

On September 23, 2003, Pam Lee, physical therapist, gave Mr. Momyer a "maximum lifting strength, standing" test.  For the squat lift, the stand lift, and the arm lift Mr. Momyer was able to lift 20 pounds; and the dynamic push and pull, he was able to do 50 pounds.  Tr. 242-43.  Also on September 23, 2003, the U of I performed a cardiovascular evaluation, in which they found that Mr. Momyer has pain in the lower back and hip, and noted that he cannot golf, play pool, fish, or garden because of the pain.  Tr. 246.  Mr. Momyer also spent a little time talking to a social worker about depression, which he stated began after personal problems in 1996.  Tr. 249.  He cried frequently during this interview; and Ted

Wernimont, a social worker, opined that Mr. Momyer needed to severely alter his lifestyle. Tr. 250. At this time, he was taking Ultracet to manage his pain and changing the position of his body to become more comfortable. Tr. 255. On October 18, 2003, Mr. Momyer saw Dr. Kaldjian at the U of I hospital. Tr. 294. He stated that his pain is an 8 on a scale of 1-10. Tr. 296.

On September 26, 2003, Mr. Momyer was referred from U of I hospital to Dr. Lassise at the Mental Health Center in Mason City. Tr. 306. Dr. Lassise diagnosed Mr. Momyer with major depression, recurrent-alcohol, chronic back pain, chronic obstructive pulmonary disease ("COPD")[3], and a Global Assessment of Functioning ("GAF") score of 45. On November 2, 2003, Mr. Momyer saw Dr. Lassise, who noted that Mr. Momyer had recurrent depression, and that he had tried Zoloft and Lexapro for depression. Tr. 305. On December 19, 2003, Mr. Momyer again saw Dr. Lassise, who diagnosed Mr. Momyer with recurrent depression, adjustment disorder with depressed mood, substance abuse-alcohol, multiple medical difficulties, COPD and liver involvement secondary to alcohol abuse, and a GAF of

_____

[3] Chronic Obstructive Pulmonary Disease (COPD) is a disease in which the airways and tiny air sacs (alveoli) inside the lungs are partially obstructed or destroyed. The most common cause is smoking.

6

48.  Tr. 304.  He also stated that he did not want to start any type of anti-depression medication at this time.  Id.

On February 3, 2004, Mr. Momyer went back to the U of I hospital for a follow-up appointment with Dr. Kaldjian.  Tr. 307.  At this time, he stopped taking antidepressants because they were not "compatible" with him.  Tr. 310.

On April 2, 2004, Mr. Momyer first saw Ken Zimmerman, a licensed independent social worker.  On March 26, 2004, Mr. Momyer saw Mr. Zimmerman again, who stated the he was suffering from major depression and a GAF of 49.  Mr. Zimmerman and Mr. Momyer discussed Mr. Momyer's ongoing mental problems and how he can work to improve some issues Mr. Momyer was currently dealing with.  Tr. 330.

On July 28, 2004, Mr. Momyer was back at the U of I hospitals where attending physician Melinda Johnson stated that Mr. Momyer's chronic pain is most likely related to his depression and anxiety.  Tr. 334.  Dr. Johnson also noted that Mr. Momyer has a depressed mood, and implored Mr. Momyer to take his Zoloft.  Id.

On June 10, 2004, Mr. Momyer saw Dr. Chen who noted that Mr. Momyer's mental issues would preclude him from obtaining and maintaining gainful employment.  Tr. 337.  However, Dr.

7

Chen thought that after Mr. Momyer's depression and anxiety were treated that Mr. Momyer could start looking for light work. Id.

On August 31, 2004, Dr. Behr filled out a disability evaluation with Mr. Momyer present. Tr. 344A. Dr. Behr opined that Mr. Momyer's present medical problems "indicate the likelihood that his health will not significantly improve to allow him gainful employment." Id.

## III.    ADMINISTRATIVE LAW HEARING

At the administrative law hearing, those present include the Plaintiff, Mr. Momyer, Plaintiff's representative, Maureen Nowak, and a vocational expert, Dr. William Tucker. Tr. 37. This hearing occurred on September 13, 2004. Id.

Mr. Momyer testified that he is 43 and completed twelfth grade, with no additional training after high school. Tr. 39. He was divorced and living in an apartment by himself at the time of the hearing. Id. Mr. Momyer testified that he is 6 feet tall and weighted 135-140 pounds. Tr. 40.

When asked about his work experience, he stated that most of his work has been through the City of Mason City[4]. Tr. 41.

---

[4] In the transcript supplied to the Court, this town appears as "Mesa City." However, it is clear that this is just a typographical error and should have read "Mason City."

In 1977-1982, Mr. Momyer worked in the Parks Department.  Tr. 41.  He testified this was seasonal work:  mowing, trimming, painting, and fixing playground equipment.  Id.  He stated that he lifted up to 100 pounds in this job.  Id.

After the Parks Department, Mr. Momyer worked in the Water Department from 1982-1994.  Id.  Here, he testified he was a heavy equipment operator in the distribution department. Tr. 41-42.  He testified there was quite a bit of heavy lifting in this job, "we took care of the water mains and fire hydrants, water services, a lot of digging, climbing ladders, in an out of man holes.  A lot of heavy-the tools were even quite heavy in that department."  Tr. 42.

After the Water Department, Mr. Momyer worked in the Streets Department from 1994-1998, also as a heavy equipment operator.  Id.  He also lifted up to 100 pounds in this job. Id.

After the Water Department, Mr. Momyer worked for the Elmwood Cemetery, doing mostly mowing and trimming.  Tr. 42-43.  Here, he testified he only lifted between 50-75 pounds. Tr. 43.  Mr. Momyer's representative next asked Mr. Momyer about his medical problems and how they prevented him from working.  Id.  Mr. Momyer testified that, "I got a lot of

9

problems with my back." Id. He testified it was pretty much his whole back, and now his right shoulder needs surgery. Id. He also testified that he has asthma and COPD emphysema. Id. Finally, he testified he was having trouble with his legs and just has no strength in his body anymore. Id. He testified he has been going for treatment locally and at the University of Iowa clinics. Tr. 44-45.

As for the shoulder limitations, Mr. Momyer testified that he cannot lift his arm above his head very well, and there is discomfort in the arm "pretty much all the time." Tr. 45-46. He testified that he was, at the time of the hearing, on a 10-pound restriction with a one time 20 pound restriction. Tr. 46. He testified that lifting a half-gallon of milk and pots and pans aggravate his shoulder and back. Id.

Mr. Momyer next testified about his back pain. Id. at 46-47. He stated that "pretty much all of" his back was painful, and testified regarding the doctors he had seen in Iowa City. Tr. 47. He stated they diagnosed him with

osteoporosis[5] and osteopenia[6].  Tr. 47.

He also testified about pain in his feet and legs.  Tr. 48.  The stated this pain is pins and needles, and numbness, with pain that goes down the back of his legs.  _Id._  He testified these problems make it hard to bend and stoop-that he can, but it's painful, slow, and he has to lean on something to help himself get back up.  _Id._  Also, he testified that stairs are difficult because of the pain and because he gets shortness of breath.  Tr. 49.  He opined that he could stand for 5 to 10 minutes before he had to sit down because his legs start getting weak and because of pain in his back.  _Id._

Next, Mr. Momyer testified regarding his drinking.  Tr. 51.  He stated that he used to drink 8 drinks a day, but that he currently only drank 6 to 12 drinks on the weekends when he was watching sports.  _Id._  The representative asked Mr. Momyer if he was in treatment for depression, and Mr. Momyer responded that he was going to therapy at Mental Health Center

_____

[5] Osteoporosis is a condition that features loss of the normal density of bone and fragile bone.

[6] Osteopenia refers to bone mineral density that is lower than normal peak bone mineral density but not low enough to be classified as osteoporosis.

11

of North Iowa.  Id.  He also stated that he was on medication for depression.  Id.

Mr. Momyer stated that his depression started in 1996, when his legal troubles also began.  Tr. 52.  He stated that he found out his wife was having an affair, and he was accused, and acquitted, of sexually abusing his stepdaughter. Tr. 52.  He stated that he lost his job in 1998 because he had his license suspended for an operating while intoxicated (OWI) offense.  Tr. 54.  Mr. Momyer was asked by his representative if he could work in a position where he had to relate to people, and Mr. Momyer responded that he did not think he could.  Tr. 57

The ALJ began his questioning by asking Mr. Momyer about his ability to relate to people.  Tr. 57.  Mr. Momyer stated that he did not like face-to-face confrontation.  Id.  Next, the ALJ questioned Mr. Momyer about his previous jobs with the City of Mason City.  Tr. 58.  Mr. Momyer said he was fired from his job at the cemetery because he was uninsurable; and since June 2001, he has not had any job.  Id.  The ALJ questioned Mr. Momyer on his medication and exercise.  Tr. 59- 60.  Mr. Momyer stated that he tried to walk about the equivalent of one city block for exercise, but that his feet

12

and legs usually stopped him from any further walking. Tr. 62. He testified that fumes bothered his breathing. Tr. 63. Finally, the ALJ asked Mr. Momyer about his typical day, which Mr. Momyer testified that he usually spends watching TV and doing simple daily living activities around the house. Tr. 63-65.

Next, the vocational expert ("VE"), Dr. William Tucker, testified. Tr. 65. The ALJ, after some preliminary questions, posed a hypothetical question for Dr. Tucker. Tr. 68-69. The ALJ first asked if the following individual could perform any jobs he had previously performed personally if he was:

> an individual who is 43 years old. He will be 44 years old as of December 11th, and was 40 years old as the alleged onset date. He's a male. He has a high school education and he has the following impairments: he has medically determinable impairment resulting in complaints of spinal pain, chronic right shoulder impairment, chronic obstructive pulmonary disease with a history of asthma, liver abnormality, a history of custerol condriatis (phonetic sp.) and rib fractures; a history of rosetia (phonetic sp.); recurrent depression and alcohol abuse, and as a result of a combination of those impairments, he has a residual functional capacity as follows: He cannot lift more than 10 pounds, or 20 pounds, routinely lift 10 pounds. He can stand or walk at least 6 hours in an 8 hour day.

13

> Sit for at least 6 hours in an 8 hour day
> with no continuous bending, stooping,
> squatting, kneeling, crawling or climbing.
> No continuous work with the right arm
> overhead involving more than 10 pounds.
> This individual should not be exposed to
> excessive heat, humidity, cold, dust or
> fumes, or vibration. He is not able to do
> very complex or technical work, but is able
> to do more than simple routine repetitive
> work that does not require constant, very
> close attention to detail. He does require
> occasional supervision. He should not work
> at more than a regular pace, and that's
> using three speeds of pace being fast,
> regular or slow, and should not work at
> more than a mild to moderate level of
> stress.

Tr. 68-69.

Dr. Tucker, the VE, testified that, in the hypothetical question, the individual could not perform his past work, nor does he have any transferable skills. Tr. 69. However, Dr. Tucker testified that there are unskilled jobs this individual could do, including assembler of small products, inspector and hand packager, and wire worker. Tr. 70. The ALJ asked another hypothetical where the individual:

> will be an individual of the same age, sex,
> past relevant work and impairments as
> previously specified. And this would be an
> individual who had the residual functional
> capacity as follows: This individual could
> not lift more than 20 pounds, routinely
> lift 10 pounds. With no standing of more
> than 5 to 10 minutes at a time. No sitting

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 14 of 39

of more than 30 minutes at a time, and no
walking of more than 4 blocks at a time
with only occasional bending, stooping or
climbing.  Only occasional reaching with
the right arm to the side or work with the
right arm above the shoulder level.  This
individual should not be exposed to
excessive heat, humidity, cold, dust,
fumes, pollen or mold.  He is not able to
do very complex or technical work, but is
able to do more than simple routine
repetitive work that does not require
constant close attention to detail or use
of independent judgment for decision
making.  He can only have occasional
contact with the public, co-workers and/or
supervisors.  He does require occasional
supervision.  He should not work at more
than a regular pace or more than a mild
level of stress.

Tr. 71.

Here, Dr. Tucker testified that this individual would not
be able to return to past relevant work, would have no
transferrable work skills, and the standing and sitting
limitations would eliminate full-time employment.  Tr. 71.

**IV.  THE ALJ'S DECISION**

The ALJ begins by determining that Mr. Momyer cannot
return to any of his past work, however, the ALJ found that
there are a significant number of "light" unskilled jobs that
Mr. Momyer is capable of performing.  Tr. 16.  Therefore, the
ALJ found that Mr. Momyer was not "disabled" within the
meaning of the Social Security Act.  Id.

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 15 of 39

The ALJ notes that Mr. Momyer has worked as a municipal maintenance worker and a heavy equipment operator and alleges he became disabled on November 20, 2001, due to right shoulder, back, respiratory problems, arthritis, and depression. Tr. 17. The ALJ also found that Mr. Momyer has not engaged in substantial gainful activity since his onset date. Tr. 18.

The ALJ noted that the evidence indicates that Mr. Momyer suffers from chronic right shoulder impairment, chronic obstructive pulmonary disease with a history of asthma, liver abnormality, history of costochondritis[7] and rib fractures, history of rosacea[8], recurrent depression and alcohol abuse. However, the ALJ found none of these met or equaled the criteria of any listed impairment. Id. The ALJ noted Mr. Momyer's mental impairment, but found that his depression only caused mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties of maintaining concentration, persistence, or pace, and Mr. Momyer has had no episodes of decompensation.

---

[7] Inflammation of one or more rib cartilages, characterized by local tenderness and pain of the anterior chest wall that may radiate.

[8] An inflammatory skin disease that causes facial redness.

16

Id.

The ALJ detailed Mr. Momyer's medical history, noting Mr. Momyer's shoulder, back, and depression. Tr. 19-20. After this review, the ALJ found the testimony of Mr. Momyer to be not fully credible. Tr. 20. Furthermore, the ALJ found Mr. Momyer to be not credible concerning his ability to work and the severity of his limitations. Id. Nor did the ALJ find many of the examining doctors credible and discounted their opinions. Tr. 21-22. The ALJ found Mr. Momyer was able to perform a wide range of light work activity. Id. at 20. Specifically, the ALJ found that the vocational expert was credible, and that Mr. Momyer could work as an assembler, inspector, or wire welder. Tr. 22.

## V.  DISCUSSION

This Court must determine whether the Commissioner's decision to deny disability benefits is "supported by substantial evidence on the record as a whole." Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir. 1995).

### A.  The Court's Jurisdictional Basis

In Bowen v. Yuckert, 482 U.S. 137 (1987), the United States Supreme Court delineated the steps which precede a district court's review of a Social Security appeal:

17

The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq. (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 et seq., 416.1467 et seq. (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court. 42 U.S.C. §405(g).

Yuckert, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 96 L. Ed. 2d 119 (1987).

Section 1383(c)(3) of Title 42 of the United States Code provides, "The final determination of the Secretary after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title. . . ." In pertinent part, 42 U.S.C. § 405(g) provides:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a

civil action . . .brought in the district court of the United States for the judicial district in which the plaintiff resides... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions . . . .

Accordingly, this Court may affirm, reverse or remand the ALJ's decision.

**B. The Substantial Evidence Standard**

The Eighth Circuit has made clear its standard of review in Social Security cases. If supported by substantial evidence in the record as a whole, the Secretary's findings are conclusive and must be affirmed. Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005); Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g) (Supp. 1995)). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006) (quoting McKinney v. Apfel,

19

228 F.3d 860, 863 (8th Cir. 2000)).  In the words of the Supreme Court, substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

The Eighth Circuit has taken pains to emphasize that, "[a] notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989)).

"Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis.  In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  Thus, the Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. Id.

20

The Court, however, does "'not re-weigh the evidence or review the factual record de novo.'" Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996) (quoting Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994)). Likewise, it is not this Court's task to review the evidence and make an independent decision. Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996) (citing Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). "If, after review, [it is] possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [this Court] must affirm the denial of benefits." Id. Even in the case where this Court "might have decided the case differently," this Court cannot reverse if there is substantial evidence to support the Commissioner's decision. Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (citing Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002)).

The process, however, is not stacked in the Commissioner's favor because, "[t]he standard requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner]'s action." Cooper v. Secretary, 919 F.2d 1317, 1320 (8th Cir. 1990) (citing Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989)). In cases where the Commissioner's

21

position is not supported by substantial evidence in the record as a whole, the Court must reverse.  See Lannie v. Shalala, 51 F.3d 160, 164 (8th Cir. 1995).  "'[T]he goals of the Secretary and the advocates should be the same:  that deserving claimants who apply for benefits receive justice.'" Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994) (quoting Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)).

## C.  Determination of Disability

Social Security Disability Benefits may be awarded to disabled individuals who meet certain income and resource guidelines.  42 U.S.C.A. § 423 (d)(1)(A).  In connection with the award of such benefits to an adult:

> [A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C.A. § 423 (d)(1)(A).

An impairment will only be considered of such severity if the individual is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy. . . ."  42 U.S.C.A. § 423

22

(d)(2)(A).

Determination of a claimant's disability involves a five step analysis.  20 C.F.R. § 404.1520 (a-f).  In the first step, the ALJ determines if the claimant had engaged in past substantial gainful activity.  Next, the ALJ decides if the claimant has an impairment.  Third, the ALJ must look at the regulations to determine if the impairment meets or is medically or functionally equal to a Listing in Appendix 1, Subpart P of Regulation No. 4.  Fourth, the ALJ assesses the claimant's residual functional capacity (RFC), to see if the claimant could perform his past relevant work.  At the fifth and final step of the analysis, the Social Security Commission must prove that there are a significant number of jobs (other than his past relevant work) in the national economy that a person of the same age, education, past work experience, and physical and mental residual functional capacity can perform. 20 C.F.R. § 404.1520 (f).

To acquire Social Security disability benefits, initially the claimant has the burden of showing 'that [he] is unable to perform [his] past relevant work.'"  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (quoting Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998)).  This encompasses the first

four steps of the analysis. "If the claimant carries [his] burden, 'the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.'" Id. There must be some medical evidence to support the ALJ's determination of the claimant's residual functional capacity, and this evidence should address the claimant's ability to function in the workplace. Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

### D. Standard for Reviewing the ALJ's Decision

"Deference to the ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence." Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005). By that same token, the ALJ's credibility determination should not just be stated as a conclusion in the guise of findings, but should be closely and affirmatively linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Additionally, the law in the Eighth Circuit is well settled that an ALJ may not discredit a claimant's subjective complaints of pain, discomfort, or other disabling limitations simply because there is a lack of objective evidence. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (noting that the ALJ may not discredit a claimant solely because the objective medical evidence does not fully support the claimant's subjective complaints of pain). Instead, the ALJ may only discredit the subjective complaints if they are inconsistent with the record as a whole. See Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); see also Bishop v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Under Polaski, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. Polaski, 739 F.2d at 1322. When the

25

ALJ considers all of the Polaski factors and still makes a determination to reject a claimant's subjective complaints, the ALJ must give "good reasons" for discrediting the claimant's testimony. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). If an ALJ discredits a claimant's testimony and gives good reasons for doing so, the ALJ's decision should normally receive deferential treatment. Id. (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)).

"As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). "It is well-settled 'that pain can cause disability within the meaning of the Social Security Act.'" Johnson v. Sec. of Health & Human Servs., 872 F.2d 810, 812 (8th Cir. 1989) (quoting Northcutt v. Califano, 581 F.2d 164, 166 (8th Cir. 1978)).

### E. Analysis of the ALJ's Decision

The ALJ was persuaded that Mr. Momyer is not as physically limited as he alleges. Tr. 20. While the ALJ is persuaded that Mr. Momyer has some limitations, the ALJ found that Mr. Momyer has the physical and mental capabilities to perform "light" unskilled jobs. Tr. 16.

The ALJ found that Mr. Momyer had the residual functional capacity "to occasionally lift and carry objects weighing up to 20 pounds and up to 10 pounds frequently during the average 8-hour workday. He can sit for up to 6 hours and stand and/or walk for 6 hours in an 8-hour workday; and cannot continuously bend, stoop, twist, kneel, or climb; and cannot do continuous overhead work with the right arm involving more than 10 pounds; and must avoid excessive heat/humid, dust, cold fumes, vibration; not able to do very complex-technical work, but able to do more than simple, routine, repetitive work that does not require constant very close attention to detail; occasional contact with public; but needs occasional supervision. He should not work at more than a mild to moderate level of stress." Tr. 23. Based on this finding, the ALJ concluded that Mr. Momyer could not perform his past relevant work, nor did Mr. Momyer have any transferable skills from any past relevant work. Tr. 23. However, the ALJ concluded that there are other jobs existing in significant numbers in the national economy that Mr. Momyer was able to perform. Tr. 24. Based on the vocational expert's testimony, the ALJ found that Mr. Momyer could work as a assembler, inspector, and wire welder. Tr. 24.

While this Court agrees with the ALJ that Mr. Momyer cannot return to his past work, this Court is persuaded that Mr. Momyer cannot adjust to any other work in the national economy. This Court concludes that the ALJ's <u>Polaski</u> analysis is unsupported by the record.

**(1) Daily activities:**

The ALJ found that Mr. Momyer's ability to work was not supported treatment records or statements of the claimant regarding his daily activities and physical activities. Furthermore, the ALJ gave no weight to the opinion of Dr. Chen and Dr. Behr. Further, the ALJ stated that Mr. Momyer's "activities of daily living functioning were not significantly impaired." The ALJ noted that Mr. Momyer is independent for all self-cares and for taking medications and helps with household chores and other activities around his house.

It is well supported that a treating source's opinion is to be given controlling weight if the opinion is well supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with other substantial evidence. 20 CFR § 404.1527(d)(2). <u>See</u> <u>Hacker v. Barnhart</u>, 459 F.3d 934 (8th Cir. 2006) (Heaney, J. dissenting). Here, the ALJ gave no weight to the testimony of Dr. Chen, a member

28

of the University of Iowa Back Care Team, and Dr. Behr, Mr. Momyer's physician in Mason City. The Court is persuaded that the ALJ was incorrect in giving no weight to Dr. Chen and Dr. Behr.

The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment. <u>Lester v. Chater</u>, 81 F.3d 821, 833 (9th Cir. 1996). The ALJ gave no weight to Dr. Chen because Dr. Chen provided a "check list form from a doctor who at best saw the claimant one time." The ALJ failed to note that Dr. Chen was part of a comprehensive team that evaluated Mr. Momyer. Also, Dr. Chen personally saw Mr. Momyer three times for evaluations in September 2003, April 2004, and June 2004. The ALJ also failed to address the report from Dr. Behr. Dr. Behr saw Mr. Momyer on a number of occasions in Mason City.

The ALJ also found that Mr. Momyer's testimony as to his activities of daily living was not fully credible. The Court is persuaded that the ALJ erred by finding Mr. Momyer not

fully credible and finding that Mr. Momyer's activities of daily living are inconsistent with a level of disabling symptoms. As noted in Dr. Behr's notes, Mr. Momyer suffers from shoulder, back, joint, and neck pain. Tr. 227, 365. This pain is described as aching, sharp, and throbbing and the pain duration is constant and chronic. Tr. 365.

As noted, Dr. Chen saw Mr. Momyer on three occasions; and the Iowa Back Team, which Dr. Chen is a member, saw Mr. Momyer numerous times. Dr. Chen also completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." Tr. 321-24. In this document, Dr. Chen states that Mr. Momyer can occasionally, and frequently, lift 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit less than 6 hours in an 8-hour workday with periodic alternating sitting and standing to relieve pain and discomfort, and is not limited in his upper and lower extremities in both pushing and pulling. Tr. 321-22. Dr. Chen also noted that Mr. Momyer would be "marked" by fatigue in his ability to function, and noted that Mr. Momyer would not be able to sustain a 6-8 hour workday, 5 days a week due to fatigue and shortness of breath. Tr. 322. Mr. Momyer was also limited to "never" by Dr. Chen on climbing and

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 30 of 39

balancing, and occasionally on kneeling, crouching, crawling, and stooping. Tr. 322. Dr. Chen limited Mr. Momyer in reaching all direction and fingering, with unlimited handling and feeling. Tr. 323.

Dr. Behr also completed a checklist-style form titled "Medical Source Statement of Ability to do Work-Related Activities (Physical)." Tr. 325-28. In this document, Dr. Behr states that Mr. Momyer can occasionally lift less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit less than 6 hours in an 8-hour workday, and is limited in his upper and lower extremities in both pushing and pulling. Tr. 325-26. It should be noted that both Dr. Chen and Dr. Behr's opinion as to Mr. Momyer's ability to stand and/or walk as well as his ability to sit for certain lengths of time are significantly different than the hypothetical scenario the ALJ posed to the vocational expert.

Dr. Behr also noted that Mr. Momyer would be severely limited by fatigue in his ability to function, and noted that Mr. Momyer would not be able to sustain a 6-8 hour workday, 5 days a week due to fatigue and shortness of breath. Tr. 326. Mr. Momyer was also limited to "never" by Dr. Behr on climbing, balancing, kneeling, crouching, crawling, and

31

stooping. Dr. Behr limited Mr. Momyer in reaching all
direction, handling, fingering, and feeling. Tr. 327.

The ALJ failed to address these limitations, instead
generally dismissing Dr. Behr's findings as conclusory. The
ALJ must give good reasons for discounting this evidence.
This checklist is similar to the checklist that non-examining
physicians complete for the Commissioner. The Court is
convinced that Dr. Behr's opinions must be given appropriate
weight, and when supported by the record as a whole, more
weight than the non-examining physician.

Furthermore, this Court finds that the ALJ erred when he
stated that the reports from the Iowa Back Team do not support
the degree of limitation indicated in Dr. Chen's report.

The Court is left to surmise that the ALJ relied on the
opinions of the non-treating physicians, Dr. Koons and Dr.
Dankle, who submitted reports stating Mr. Momyer could lift 20
pounds occasionally and 10 pounds frequently. Tr. 215-222,
194-98. However, as demonstrated above, there are repeated
examples and testimony by Mr. Momyer and his treating
physicians that he is not capable of the physical exertion
alleged in these reports. Tr. 174, 242. The ALJ's assertion
that these source's opinions were inconsistent with the

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 32 of 39

record, and therefore should not be afforded controlling or great weight, is not borne out by the record.

This Court is persuaded that Dr. Chen's and Dr. Behr's opinions should be given the appropriate weight because of the fact that they both worked frequently and closely with Mr. Momyer on evaluating and treating his medical problems.

**(2) Duration, frequency, and intensity of pain:**

The Court cannot find any reference by the ALJ to this factor. However, the record is replete with Mr. Momyer seeking medical treatment for pain in his shoulder, hips, and back. Mr. Momyer testified the had a cortisone shot in his shoulder that did not alleviate his pain. He also testified that his hips and back "bothers me quite a bit" and "pains that go down the backs of his legs." He also testified that he gets "sharp, sharp pains on my, kind of on my left, left side, left side back." The record is also filled with Mr. Momyer requesting and receiving several medications to help with his pain. This Court is persuaded that this factor also supports Mr. Momyer's allegations of disabling pain.

While it is true that Mr. Momyer was not consistently taking medication to manage his pain, this Court is not persuaded, as the defendant argues, that this is because he

33

was not in pain. It is equally plausible that, because Mr. Momyer was not working, he could not afford pain medication. There is nothing in the record that leads this Court to speculate as to the reasons Mr. Momyer was not consistently taking pain medication.

**(3) Dosage, effectiveness, and side effects of medication**

Mr. Momyer has tried numerous medications and treatments to alleviate his physical conditions. At the time of the hearing, he was taking Combivent and Advair for his asthma; Fosamax for osteoporosis; Tramadol for pain; Famotidine for his stomach; Zoloft for depression; Bromazepam for panic attacks and anxiety; and Alprazolam for panic attacks. Tr. 60-61. The record shows Mr. Momyer's medications continually being adjusted to try and find a combination that was the most effective combination. Tr. 190, 229, 299.

Mr. Momyer was attempting to control his pain with medication including Tramadol and Ultracet. Tr. 225. While Mr. Momyer was not consistently taking pain medication, there is evidence throughout the record of Mr. Momyer attempting to receive some relief from pain.

He was also taking anti-depressants, including Zoloft and Lexapro for depression. As noted above, Mr. Momyer had to be

34

convinced to begin taking Zoloft again after he found that it was not "compatible" with him.  Tr. 304.

Objective medical evidence relating to medications support Mr. Momyer's allegations of disabling pain.

**(4) Functional restrictions**

Dr. Behr opined that Mr. Momyer was not capable of maintaining full-time employment.  Dr. Behr stated, "it is my opinion that based upon previous evaluations as well as reviewing the consultations...from the University of Iowa, that the patient should be permanently and completely disabled.  The multitude of his permanent medical problems certainly indicate the likelihood that his health will not significantly improve to allow him gainful employment."  The ALJ states that this "assessment is not supported by the evidence in the record considered as a whole..."  As a treating physician, Dr. Behr's opinion that Mr. Momyer is disabled is not controlling as to the ALJ.  "Statements that a claimant could not be gainfully employed 'are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'"  Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (quoting Nelson v. Sullivan, 946 F.2d 1314, 1316

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 35 of 39

(8th Cir. 1991)). While this is true, "A treating physician's opinions must be considered along with the evidence as a whole, and when a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." <u>Cruz</u>, 85 F.3d at 1325.

As thoroughly discussed above, there is ample evidence in the record to support Dr. Chen's and Dr. Behr's opinion that Mr. Momyer is not capable of maintaining full-time employment. Both Dr. Chen's and Dr. Behr's, "Medical Source Statement of Ability to do Work-Related Activities (Physical)" noted that Mr. Momyer could not perform full-time employment.

## VI. CONCLUSION

After careful review of the administrative record, this Court is persuaded that there is not substantial evidence to support the ALJ's decision, nor does this Court find it necessary to remand the decision for further factual findings. This Court is persuaded that there is substantial evidence on the record that Mr. Momyer's physical problems are so severe as to be disabling, and that Mr. Momyer could not return to his past work or other jobs in the national economy.

The Court has carefully considered the arguments of the parties and closely examined the record and is persuaded that

36

there is not substantial evidence in the record as a whole to support the decision of the ALJ. This Court is persuaded that the ALJ erred in discrediting the testimony of the plaintiff, and the ALJ did not appropriately accept the treating physicians' opinions. Furthermore, the ALJ's hypothetical question did not accurately depict Mr. Momyer's impairments and limitations as set out herein on pages 3-15.

This Court understands that the ALJ is to make the credibility findings, but this Court is unable to find solid reasons for the ALJ's refusal to accept Mr. Momyer's testimony regarding pain and his physical limitations. On the other hand, this Court was able to find substantial evidence to support Mr. Momyer's allegations of disabling pain and physical limitations, all as set out on pages 3 - 15 of this Order.

Based on the foregoing, this Court concludes that there is not substantial evidence in the record as a whole to support the ALJ's findings that Mr. Momyer is not disabled. A review of the record as a whole supports the conclusion that Mr. Momyer was, and is, disabled and unable to work as of August 31, 2004.

Remanding this case for further proceedings would only delay Mr. Momyer's receipt of supplemental security income benefits (SSI), therefore, "an immediate order granting benefits without remand is appropriate." <u>Cline v. Sullivan</u>, 939 F.2d 560, 569 (8th Cir. 1991); <u>Tennant v. Schweiker</u>, 682 F.2d 707, 710 (8th Cir. 1982). Mr. Momyer clearly suffers from pain. He has significant trouble standing, walking, and sitting for any length of time, along with trouble lifting his right arm. These conditions significantly impair his ability to function in the workplace.

Judgment shall be entered reversing the ALJ's decision of denying such benefits.

Upon the foregoing,

**IT IS HEREBY ORDERED** that the decision of the ALJ is reversed, and the Commissioner is directed to compute and award supplemental security income disability benefits to Mr. Momyer with an onset date of August 31, 2004.

A timely application for attorney fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), must be filed within thirty days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Mr. Momyer's attorney wishes to apply for EAJA fees, he must do so

within thirty (30) days of the entry of the final judgment based on the Order in this case.

**IT IS SO ORDERED** this 26th day of September, 2007.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

Case 3:06-cv-03040-DEO   Document 15   Filed 09/26/07   Page 39 of 39